UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LUIS ENRIQUE CRUZ,

                    Plaintiff,

          -vs-                          **No. 1:16-CV-00965 (MAT)**
                                        **DECISION AND ORDER**
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

## I.  Introduction

Represented by counsel, plaintiff Luis Enrique Cruz ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of defendant the Acting Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied and the Commissioner's motion is granted.

## II. Procedural History

Plaintiff filed an application for SSI on November 27, 2009, alleging disability as of June 1, 2009 due to rheumatoid arthritis. Administrative Transcript ("T.") 134-37, 158. Plaintiff's application was initially denied. T. 50-54. At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") William

Weir on November 10, 2011, at which Plaintiff appeared *pro se*.
T. 38-48. On April 26, 2012, the ALJ issued an unfavorable
decision. T. 19-32. On June 25, 2013, the Appeals Council denied
Plaintiff's request for review, making the ALJ's determination the
Commissioner's final decision. T. 1-4.

Plaintiff timely commenced an action in this Court challenging
the Commissioner's final decision and, on August 8, 2014, the Court
issued a Decision and Order remanding the matter for further
administrative proceedings. T. 616-17. On September 18, 2014, the
Appeals Council remanded the matter to the ALJ, instructing him to
complete the administrative record, offer Plaintiff the opportunity
for a hearing, and issue a new decision. T. 624-26.

A new hearing before ALJ Weir was held on May 15, 2015. T.
504-557. Plaintiff appeared with his counsel, and testimony was
taken from medical expert Dr. Anthony Levine and vocational expert
("VE") Timothy Janikowski. After this hearing, Plaintiff's counsel
submitted a brief to the ALJ in which she requested a medical
expert with knowledge and experience in endocrinology (specifically
related to diabetes) review Plaintiff's file. T. 790.
Accordingly, a supplemental hearing was held on November 2, 2015,
at which medical expert Dr. Dorothy Kunstadt and VE Rachel A.
Duchin testified. T. 558-585.

On September 29, 2016, the ALJ issued an unfavorable decision.
T. 479-502. Plaintiff thereafter commenced this action.

## III. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one of the five-step sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 27, 2009, the date of his application. T. 485.

At step two, the ALJ found that Plaintiff suffered from the severe impairments of obesity, type II diabetes mellitus, and degenerative disc disease of L3-L4 and L5-S1. *Id.* The ALJ further found that Plaintiff's hypertensive heart disease, history of peripheral vascular disease, asthma, and substance abuse disorder were not severe impairments, and that he did not have medically determinable impairments of arthritis or joint dysfunction. T. 485-87.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. T. 487.

Before proceeding to step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional limitations: can lift 20 pounds occasionally and 10 pounds frequently; can occasionally carry 10 pounds; can sit for six hours total and stand for three hours total in an eight-hour workday; can sit and stand for no longer than 30 minutes each

without interruption and must sit for at least one minute after standing for 30 minutes; can walk two hours total in an eight-hour workday, but for no more than 20 minutes at a time; must avoid walking on uneven surfaces; can occasionally crouch, stoop, bend, and climb stairs and ramps, but cannot do so repeatedly; cannot climb scaffolds, crawl, kneel, operate heavy machinery, work at unprotected heights, work in extreme cold, or reach above shoulder height with his right arm; and must have the opportunity to use the bathroom for one to two minutes every hour. T. 487-88.

At step four, the ALJ found that Plaintiff had no past relevant work. T. 493. At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cashier, bench assembler, and inspector. T. 494. Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. T. 494-95.

## IV. Discussion

### A. Scope of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also*

*Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation omitted). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

In this case, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence. In particular, Plaintiff contends that (1) the ALJ failed to properly evaluate the medical opinions of record, (2) the ALJ failed to properly develop the record despite the presence of clear gaps in the medical evidence, (3) the ALJ failed to properly consider the limiting effects of Plaintiff's severe and non-severe impairments in combination, and (4) the ALJ mischaracterized Plaintiff's activities of daily living. The Court has considered these arguments and, for the reasons set forth below, finds them without merit.

## B. Evaluation of Medical Opinions

Plaintiff argues that the ALJ failed to appropriately consider and weigh the medical opinions of record. Specifically, Plaintiff takes issue with the ALJ's consideration of the opinions of treating physician Dr. J. Lawrence, consultative psychiatric examiner Dr. Renee Baskin, consultative examiner Dr. Samuel Balderman, therapist Antanien Slomba, and testifying medical experts Drs. Levine and Kunstadt. The Court has considered the ALJ's treatment of each of these opinions and finds no error.

### 1. Dr. Lawrence's Opinion

Dr. Lawrence completed a Physical Assessment for Determination of Employability related to Plaintiff in November 2009. T. 283-84. In this form, Dr. Lawrence indicated that Plaintiff had arthritis and diabetes. T. 283. He noted that Plaintiff had a decreased range of motion and decreased sensation, and opined that Plaintiff was not capable of participating in work activities and appeared to be permanently disabled. T. 283-84. Dr. Lawrence failed to complete the portion of the form asking him to estimate Plaintiff's functional limitations. T. 284.

In his opinion, the ALJ gave Dr. Lawrence's opinion little weight. T. 492. He explained that the opinion was inconsistent with Plaintiff's consistently normal physical examinations and lack of persistent subjective complaints. *Id*. He further observed that Dr. Lawrence's opinion was inconsistent with his recommendation that Plaintiff undergo only conservative treatment, and that

Drs. Levine and Kunstadt had testified that Dr. Lawrence's diagnoses were not supported by the evidence of record. *Id*.

Plaintiff contends that the ALJ failed to properly assess Dr. Lawrence's opinion. The Court disagrees. Under the Commissioner's regulations in effect at the time the ALJ issued her decision in this case, a treating physician's opinion is generally entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger*, 335 F.3d at 106. An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted). However, the ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the

regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31–32).

Here, the ALJ adequately explained his reasons for affording Dr. Lawrence's opinion little weight. As the ALJ noted, Dr. Lawrence's opinion was inconsistent with Plaintiff's contemporaneous treatment records. For example, at an examination on July 29, 2009, Plaintiff reported that his general health was good and that he was working to improve his exercise routine. T. 824. Plaintiff had a full range of motion in his spine and his strength was 5/5, with no instability in his lower extremities. T. 826. Similarly, throughout August and September 2009, although Plaintiff's diabetic condition was worsening due to failure to take his prescribed medication (*see, e.g.,* T. 829, 834, 838), Plaintiff had essentially normal physical examinations (*see, e.g.,* T. 830-31, 835-36, 839-840). On December 12, 2009, shortly after Dr. Lawrence issued his opinion, Plaintiff reported to his primary care physician that his general health was fair and that he was not experiencing any loss of sensation or weakness and only mild pain in the morning. T. 854. Plaintiff's physical examination was once again largely normal, though he did exhibit a limited range of motion in his spine. T. 855.

An ALJ may afford less than controlling weight to a treating physician's opinion where it is "inconsistent with other substantial record evidence." *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012). In this case, the ALJ properly found that there

were clear inconsistencies between Dr. Lawrence's opinion and the objective medical evidence of record.

It also was not error for the ALJ to credit the testimony of medical experts Drs. Levine and Kunstadt. These expert physicians carefully reviewed the complete medical record and rendered opinions consistent therewith, and the ALJ was permitted to rely on those opinions. *See Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995) (noting that the applicable regulations "permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record"); *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (same).

Moreover, Dr. Lawrence did not offer any specific opinions regarding Plaintiff's functional limitations, leaving that part of the form blank. With respect to Dr. Lawrence's statements that Plaintiff was not capable of participating in work activities and appeared to be permanently disabled, the ultimate issue of whether a claimant is disabled is reserved to the Commissioner and "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." *Kelly v. Berryhill*, No. 1:15-CV-00960-MAT, 2018 WL 1046793, at *2 (W.D.N.Y. Feb. 24, 2018) (internal quotation omitted). The ALJ accordingly did not err in affording these portions of Dr. Lawrence's opinion less than controlling weight.

For the foregoing reasons, the Court finds that the ALJ appropriately afforded Dr. Lawrence's opinion less than controlling weight. Accordingly, remand is not warranted on this basis.

## 2. Dr. Baskin's and Dr. Balderman's Opinions

Plaintiff further argues that the ALJ erred in his consideration of consultative examiners Dr. Baskin's and Dr. Balderman's opinions. Again, the Court finds no merit in this argument.

An ALJ has discretion to weigh the opinion of a consultative examiner and attribute the appropriate weight based on his review of the entire record. *See Burnette v. Colvin*, 564 F. App'x 605, 605 (2d Cir. 2014) (finding that the ALJ properly exercised his discretion in giving little weight to the consultative examiner's opinion, as it was inconsistent with the record as a whole). "There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations," and the ALJ is free to disregard identified limitations that are not supported by the evidence of record. *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013).

In this case, Dr. Baskin performed a psychiatric consultative examination of Plaintiff on February 11, 2010. T. 218-221. On mental status examination, Plaintiff was responsive and cooperative. T. 219. His manner of relating, social skills, and overall presentation were all adequate. *Id*. Plaintiff's speech was fluent and clear and his expressive and receptive language were adequate. *Id*. His thought processes were coherent and goal-

directed, with no evidence of hallucinations, delusions, or paranoia. T. 220. Plaintiff's affect was at full range and appropriate in speech and thought content and his mood was euthymic. *Id*. Plaintiff was appropriately oriented and his attention, concentration, recent, and remote memory skills were intact. *Id*. Plaintiff's insight and judgment were fair to good and his intellectual function was estimated to be in the borderline range. *Id*. Dr. Baskin opined that Plaintiff would have minimal to no limitations being able to follow and understand simple direction and instructions, perform simple tasks independently, maintain concentration and attention, maintain a regular schedule, learn new tasks with supervision, make appropriate decisions, relate adequately with others, and deal with stress. T. 221. Dr. Baskin observed that Plaintiff's "[m]edical/physical problems may interfere with his ability to maintain a regular schedule" and indicated that the adjudicator should "refer to the medical evaluation" for further information as to this point. *Id*.

Dr. Balderman similarly performed a physical consultative examination of Plaintiff on February 11, 2010. T. 222-25. On physical examination, Plaintiff was 5'10" and weighed 310 pounds. T. 223. His blood pressure was 130/80. *Id*. Plaintiff was in no acute distress, but had a stiff gait and could not walk on his heels or toes or squat to more than 20% of full. *Id*. Plaintiff's stance was normal, he needed no help changing or getting on or off the exam table, and he was able to rise from a chair without difficulty. *Id*. Plaintiff had full flexion, extension, and rotary

movement in his cervical spine, while his lumbar spine showed flexion of 80 degrees and good lateral and rotary movements bilaterally. R. 224. Straight leg raising tests were negative bilaterally and Plaintiff had a full range of motion in his hips, elbows, forearms, wrists, ankles, left shoulder, and left knee. *Id*. Plaintiff's right shoulder elevated to 100 degrees and his right knee flexed 100 degrees. *Id*. Strength was 5/5 in the upper and lower extremities, and the joints were stable and non-tender, though there was thickening of the right knee. *Id*. Plaintiff's hand and finger dexterity were slow, but he had 5/5 grip strength in his left hand and 4+/5 grip strength in his right hand. T. 225. Dr. Balderman opined that Plaintiff had moderate limitations in kneeling, climbing, prolonged walking, reaching, pushing, and pulling. *Id*. Dr. Balderman further indicated that Plaintiff had a mild limitation in performing repetitive work with his right hand. *Id*.

In his decision, the ALJ afforded "some weight" to Dr. Baskin and Dr. Balderman's opinions. T. 492-93. With respect to Dr. Baskin, the ALJ fully credited all the limitations identified except for the statement that Plaintiff might be unable to maintain a regular schedule. T. 493. The ALJ explained that there were no treatment records to support that limitation. *Id*. The Court finds no error in this assessment of Dr. Baskin's opinion. As a threshold matter, the Court notes that, contrary to Plaintiff's argument, Dr. Baskin never affirmatively opined that Plaintiff would be unable to maintain a regular schedule. To the contrary,

Dr. Baskin expressly stated that Plaintiff's psychiatric impairments would cause "minimal to no limitations" in his ability to "maintain a regular schedule." T. 220-21. She did note that Plaintiff's physical problems *might* interfere with his ability to maintain a regular schedule, but deferred to the physical evaluation as to that point. T. 221. Moreover, the ALJ adequately explained his conclusion that Plaintiff would be able to maintain a regular schedule, noting that none of Plaintiff's treatment records indicated he had any such limitation. T. 493. The ALJ thus appropriately considered and weighed Dr. Baskin's opinion.

Turning to Dr. Balderman's opinion, the ALJ found that this opinion was not fully consistent with the evidence of record, including the lack of objective medical findings and Plaintiff's self-reported activities. Again, the Court finds no error in this conclusion. The Court notes that the ALJ's RFC finding is largely consistent with Dr. Balderman's opinion, incorporating limitations in kneeling, climbing, reaching, and operating heavy machinery, and limiting Plaintiff to walking for only 20 minutes at a time. T. 487. The ALJ did not include a limitation on pushing, pulling, or repetitive right hand work in the RFC finding. However, Dr. Balderman's own examination showed that Plaintiff had 5/5 strength in his upper and lower extremities and 4+/5 grip strength in his right hand, and, as the ALJ noted, Plaintiff reported to his primary care physician that he was able to play basketball (T. 1134, 1182). Moreover, treatment records from Plaintiff's primary care physician do not indicate that Plaintiff has any

limitations with respect to his right shoulder or hand. Plaintiff also testified at the hearing that his doctor had told him to exercise regularly, and to particularly perform "finger crunching" and "finger flicks." T. 541. Under these circumstances, the Court finds that it was within the ALJ's discretion to decline to adopt these specific limitations related to Plaintiff's use of his right shoulder and hand.

### 3. Ms. Slomba's Opinion

Plaintiff next argues that the ALJ erred in considering the opinion of his therapist, Ms. Slomba. Ms. Slomba completed an Individual Treatment Plan related to Plaintiff in April 2015 in which she stated that Plaintiff was "permanently disabled." T. 1120. The ALJ rejected this opinion, noting that (1) Ms. Slomba was not an acceptable medical source and therefore could not render a medical opinion, (2) the ultimate issue of disability is reserved to the Commissioner, and (3) the evidence was inconsistent with the medical evidence of record, including specifically a lack of any complaints of a mental impairment by Plaintiff or of any abnormal clinical findings. T. 492-93.

The ALJ appropriately considered Ms. Slomba's opinion. First, the ALJ was correct that, under the applicable regulations, a "therapist's opinion is not considered a 'medical opinion.'" *Lint v. Astrue*, No. 1:07-CV-0479, 2009 WL 2045679, at *8 (N.D.N.Y. July 8, 2009). Second, and as discussed above, the ALJ was correct that the ultimate issue of disability is reserved to the Commissioner. Finally, the ALJ was correct that the medical

evidence of record did not support the conclusion that Plaintiff had a disabling mental impairment. Plaintiff had no history of psychiatric hospitalization or outpatient treatment. T. 218. He repeatedly denied having any psychiatric symptoms to his treating physicians and mini-mental status examinations were unremarkable. *See, e.g.,* T. 300-305, 425, 477, 1133. Additionally, and as the ALJ noted, Plaintiff told Dr. Baskin that he had left his previous employment due to physical limitations and not psychiatric problems. T. 218. Based on these facts, the ALJ reasonably concluded that Ms. Slomba's opinion that Plaintiff had a disability mental impairment was not consistent with the evidence of record.

### 4. Drs. Levine and Kunstadt's Opinions

Finally, Plaintiff contends that the ALJ erred in affording significant weight to the opinions of testifying medical experts Drs. Levine and Kunstadt, because they did not personally examine Plaintiff. However, an ALJ is free to give great weight to the opinion of a non-examining medical expert "as long as their opinions are supported by substantial evidence." *Arzuaga v. Colvin*, No. 13 CIV. 6847 AKH, 2014 WL 7180438, at *6 (S.D.N.Y. Dec. 11, 2014). In this case, the relatively benign medical evidence of record was fully consistent with the medical experts' opinion, and Plaintiff has failed to make any showing to the contrary. Accordingly, the Court finds no error in the ALJ's reliance on the medical experts' testimony and opinions.

**C.  Development of the Record**

Plaintiff also argues that the ALJ failed to appropriately develop the record.  In particular, Plaintiff argues that the ALJ should have ordered new consultative examinations and recontacted his treating sources.  These arguments are without merit.

While "an ALJ has an affirmative duty to develop the administrative record even when a claimant is represented by counsel, where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (quotations and citations omitted).  The ultimate question is whether the administrative record is "robust enough to enable a meaningful assessment of the particular conditions on which the petitioner claims disability." *Sanchez v. Colvin*, No. 13 Civ. 6303(PAE), 2015 WL 736102, at *7 (S.D.N.Y. Feb. 20, 2015).

In this case, the record already contained consultative examinations of Plaintiff, and there was no indication that Plaintiff's condition had significantly deteriorated since those examinations were performed.  A consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chance in the claimant's condition. *See Jones v. Colvin*, No. 13-CV-06443 MAT, 2014 WL 2560593, at *7 (W.D.N.Y. June 6, 2014) (consultative examiner's opinion was not stale where

Plaintiff failed to show that her condition had deteriorated after the report).

The ALJ was also not required to recontact Plaintiff's treating physicians, where he had obtained updated medical records and held two additional hearings, and where the medical record was voluminous. *See Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010) (ALJ was not required to recontact treating physician where "the record evidence was adequate to permit the ALJ to make a disability determination").

Nor was the ALJ obligated to subpoena additional records. The Second Circuit has made clear that the Commissioner's regulations "clearly place[] the decision to issue a subpoena within the sound discretion of the ALJ." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Here, the ALJ determined that it was not necessary to subpoena additional records from Pathways Methadone Clinic of Sisters of Charity Hospital because they had already supplied over 200 pages of records covering a four year period. T. 482-83. That determination was well within the ALJ's discretion. *See Henny v. Comm'r of Soc. Sec.*, No. 15-CV-0629 (RA), 2017 WL 1040486, at *14 (S.D.N.Y. Mar. 15, 2017) (ALJ was within discretion in denying request for subpoena where plaintiff had "a fair and meaningful opportunity to present her case, including having her treating physician['s] . . . opinions carefully reviewed and considered, the opportunity to submit additional medical evidence, and the opportunity to testify").

The medical record in this case was ample and contained no obvious gaps, and the ALJ had adequate information before him to make a well-supported determination.  Accordingly, the Court finds no violation of the ALJ's duty to develop the record.

**D.    Consideration of Plaintiff's Combined Limitations**

Plaintiff contends that ALJ failed to properly consider the limiting effects of his severe and non-severe impairments in combination. In particular, Plaintiff contends that the ALJ should have included mental limitations in his RFC finding.  This argument is without merit.

As discussed at length above, the ALJ's conclusion that Plaintiff did not have a disabling (or even severe) mental impairment was amply supported by the medical evidence of record, which showed that Plaintiff had never sought psychiatric treatment and had in fact consistently denied any psychiatric symptoms. Moreover, the evidence of record does not support the conclusion that Plaintiff suffered from mental limitations.

Plaintiff argues that Dr. Baskin's opinion showed that Plaintiff had difficulty dealing with stress and would be unable to maintain a regular schedule.  This is a mischaracterization of Dr. Baskin's opinion. As set forth above, Dr. Baskin never affirmatively opined that Plaintiff would be unable to maintain a regular schedule, and such a limitation had no support in the record.  Moreover, with respect to stress, although Dr. Baskin did opine that Plaintiff had some "stress-related problems" that might

"interfere to some degree with [Plaintiff's] ability to function on a daily basis," she ultimately concluded that he could would have minimal to no limitations in "appropriately deal[ing] with stress." T. 221. Plaintiff has therefore failed to demonstrate that Dr. Baskin's opinion supported any mental limitations that were not adopted by the ALJ. The Court thus finds no basis for remand.

**E.    Assessment of Plaintiff's Credibility**

Plaintiff's final argument is that the ALJ failed to properly assess his credibility. Specifically, Plaintiff argues that the ALJ mischaracterized his activities of daily living to improperly diminish his credibility. Again, the Court finds this argument without merit.

In assessing a claimant's credibility, an ALJ is instructed to consider whether his subjective complaints are "consistent with the medical and other objective evidence." *Wells v. Colvin*, 87 F. Supp. 3d 421, 431 (W.D.N.Y. 2015). "The ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (internal quotation omitted). An ALJ is entitled to deference when making credibility findings and can only be reversed if those findings are patently unreasonable. *Andrisani v. Colvin*,

No. 1:16-CV-00196 (MAT), 2017 WL 2274239, at *3 (W.D.N.Y. May 24, 2017).

In this case, Plaintiff argues that the ALJ mischaracterized his activities of daily living in assessing his credibility. This argument is unsupported by the record. In considering Plaintiff's subjective complaints, the ALJ noted that he reported having been able to travel out of town to help his mother move, as well as taking care of his mother and an injured neighbor, and that Plaintiff had applied for custody of his deceased sister's children. T. 490. Moreover, Plaintiff had reported that he was able to prepare and cook meals, clean, sweep, mop, dust, and shop as long as he took his time. T. 489. The ALJ did not mischaracterize these activities, which are taken directly from Plaintiff's own testimony and reports.

The ALJ also did not err in considering Plaintiff's self-reported activities in assessing Plaintiff's credibility. "An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination." *Pennock v. Comm'r of Soc. Sec.*, 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016), *report and recommendation adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016). "The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates [his] ability to work. Rather, the issue is whether the ALJ properly discounted [Plaintiff's] testimony regarding [his] symptoms to the extent that it is inconsistent with other

evidence." *Morris v. Comm'r of Soc. Sec.*, 5:12–cv–1795 (MAD/CFH), 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014). In this case, the ALJ appropriately concluded that Plaintiff's self-reported activities were not compatible with the disabling limitations he claimed.

The Court further notes that the ALJ's conclusion that Plaintiff was less than fully credible was amply supported by the record. As the ALJ explained, Plaintiff had made inconsistent statements to his treatment providers. For example, he told a counselor in February 2015 that he had a colostomy bag, but there is no evidence in the record that this was ever the case. T. 491. Moreover, although Plaintiff claimed to have been honest with his treatment providers regarding his illicit drug use, the record in fact showed that he would often "feign perplexity" when he tested positive for illicit substances and that he would not report his relapses. *Id.* Additionally, the ALJ noted that Plaintiff's testimony at the hearing was inconsistent with his prior reports to his treating physicians. The ALJ also noted that Plaintiff had told his therapist in August 2013 that he wanted to work but could not because it would "ruin" his application for disability benefits. *Id.* (referring to T. 1046). These additional facts identified by the ALJ provide substantial evidence for his negative assessment of Plaintiff's credibility. The Court therefore finds no error and no basis for remand.

## V. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 13) is denied. The Commissioner's motion for judgment on the pleadings (Docket No. 16) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:     July 31, 2018
           Rochester, New York.